IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLE T.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, Commissioner | : | |
| of Social Security[2] | : | NO. 24-6875 |

**MEMORANDUM AND ORDER**

CAROLINE GOLDNER CINQUANTO, U.S.M.J.                    February 11, 2026

Plaintiff seeks review of the Commissioner's decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[3]  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and recommend that the case be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using his first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Frank Bisignano was appointed Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this case.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[3]In order to be eligible for DIB, Plaintiff must establish that he became disabled prior to the expiration of his insured status or date last insured ("DLI").  20 C.F.R. § 404.131(b).  SSI does not have any such requirement.  Here, Plaintiff's DLI was December 31, 2015.  Tr. at 23, 226.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed applications for DIB and SSI on January 23, 2022. <u>Tr.</u> at 79, 80, 224. He alleged that he became disabled on March 1, 2021, as a result of long haul Covid, autoimmune illness/reactive arthritis, severe asthma, psychiatric impairments, and a history of a head injury. <u>Id.</u> at 224, 245. His applications were denied initially on October 27, 2022, <u>id.</u> at 128-31 (DIB), 133-36 (SSI), and again upon reconsideration on February 22, 2023. <u>Id.</u> at 139-40 (DIB), 143-44 (SSI). On March 2, 2023, Plaintiff requested an administrative hearing. <u>Id.</u> at 146. After holding a hearing on September 12, 2023, <u>id.</u> at 55-78, an ALJ issued an unfavorable decision on January 26, 2024. <u>Id.</u> at 22-43. The Appeals Council denied Plaintiff's request for review on October 31, 2024, <u>id.</u> at 1-4, making the ALJ's January 26, 2024 decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981; 416.1481.

Plaintiff sought review in federal court on December, 29, 2024, Doc. 1, and the matter is now fully briefed. Docs. 9, 16, 17. The case was originally assigned to my colleague, the Honorable José R. Arteaga, and was reassigned to me. Doc. 13.[4]

## II.    <u>LEGAL STANDARD</u>

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is

---

[4]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). <u>See</u> Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Docs. 7, 15.

whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.     Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.     If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.     If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

> 4.    If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5.    If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the

burden of proof at steps one through four, while the burden shifts to the Commissioner at

the fifth step to establish that the claimant is capable of performing other jobs in the local

and national economies, in light of his age, education, work experience, and RFC.  See

Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    DISCUSSION

### A.    ALJ's Findings and Plaintiff's Claims

In her January 26, 2024 decision, the ALJ found at step one that Plaintiff has not

engaged in substantial gainful activity since March 1, 2021, his alleged onset date.  Tr. at

24.  At step two, the ALJ found that Plaintiff has the following severe impairments:

"degenerative disc disease of the cervical spine, reactive arthropathy from a history of

Covid infection, asthma, history of concussions with neurocognitive disorder, depression,

anxiety disorder, and attention deficit hyperactivity disorder."  Id. at 25.  At the third step,

the ALJ found that Plaintiff "does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments."  Id. at 26.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work . . .  except with lifting and carrying no greater than 20 pounds occasionally and 10 pounds or less frequently;

> can stand and walk for six hours and sit for six hours; can
> perform postural activities on a frequent basis; should avoid
> extreme cold and heat, dust, fumes, chemicals, poor
> ventilation, unprotected heights and hazards; can only
> understand, remember and carry out simple, routine tasks and
> instructions; can make judgments on simple, routine tasks;
> can interact with supervisors, and coworkers; have no
> interaction with the public; and can adjust to routine changes
> in the workplace.

Id. at 30. At the fourth step, the ALJ found Plaintiff is unable to perform any of his past relevant work. Id. at 41. Based on the Plaintiff's age, education, experience, and RFC, a vocational expert ("VE") testified that Plaintiff could perform the jobs of collator operator and merchandise marker. Id. at 42. Based on this testimony, the ALJ found that Plaintiff was not disabled. Id.

Plaintiff's arguments focus on the fifth step of the sequential analysis and the VE's testimony. Specifically, Plaintiff contends that remand is required because the ALJ failed to resolve a reasoning level conflict in the vocational evidence. Doc. 9 at 2-10. In addition, Plaintiff argues that the merchandise marker job is obsolete and it is unclear whether the number of collator operator jobs constitutes "a significant number of jobs in the national economy" to satisfy Defendant's burden at the fifth step of the sequential evaluation. Doc. 9 at 9.[5] Defendant responds that Plaintiff waived his conflict argument and, in the alternative, that no conflict exists in the record. Doc. 16 at 3-8. In addition, Defendant contends that the merchandise marker job is not obsolete and, even if it were,

---

[5]Plaintiff also proactively argued that Defendant's reliance on an Emergency Message (EM-21065) would be inappropriate. Doc. 9 at 10-15. Defendant does not rely on EM-21065 in the response. Therefore, I have no need to address this issue.

there are a sufficient number of collator operator jobs to sustain the burden at step five.

Doc. 16 at 9-10.  Plaintiff has filed a Reply.  Doc. 10.[6]

### B.     Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on November 6, 1985.  Tr. at 224.  He has a bachelor's degree

in finance, international business, and theater.  Id. at 246, 1757.  He has past relevant

work as the Chief Executive Officer of a media company and as an investment banker.

Id. at 65-66, 68, 246, 1757.  Plaintiff was 35 years old when he alleges he became

disabled on March 1, 2021, and 38 years old at the time of the ALJ's January 26, 2024

decision.  Id. at 224.

Relevant to Plaintiff's claim, at the hearing, Plaintiff testified that a number of

conditions affect his mental functioning.  He has long-haul Covid which "causes

cognitive issues where [his] memory feels like [he has] dementia, difficulty

communicating, and emotional instability."  Tr. at 60.  He also suffers from mood

swings, anxiety, depression, crying spells, and emotional difficulty.  Id. at 60-61.  His

post-concussion syndrome and susceptibility to concussions causes cognitive issues and

issues with his memory, speech, and communication.  Id. at 61.  His mental health

conditions, for which he sees a psychiatrist and psychologist, cause mood swings,

anxiety, depression, and crying spells.  Id. at 62.  In addition, the medications he is

---

[6]Because Plaintiff presents a predominantly legal argument rather than challenging
the ALJ's consideration of the medical and mental health evidence, I will omit a detailed
recitation of the medical record and discuss relevant evidence in discussing Plaintiff's
claim.

prescribed cause dizziness, nausea, inability to think, and brain fog, but he testified that without the medication he "can't even get out of bed." Id. at 63.

A VE also testified at the administrative hearing. Tr. at 8-77. The ALJ asked the VE a series of hypotheticals covering various exertional levels and mental abilities. Id. at 70-75. In the relevant hypothetical, the ALJ asked the VE to consider someone of Plaintiff's age, education, and background, who could perform light work (lift 20 pounds occasionally and 10 pounds frequently), stand and walk for 6 hours and sit for 6 hours, and has the ability to frequently perform postural activities, but who should avoid extreme cold, heat, dust, fumes, chemicals, poor ventilation, unprotected heights and hazards. Id. at 71, 74-75. With respect to mental limitations, the ALJ said, "[t]he individual could understand, remember, carry out simple routine tasks and instructions; make judgments on simple routine tasks; could interact appropriately with supervisors [and] co-workers; no interaction with the public; and could adjust to routine changes in the workplace." Id. at 74-75. The VE testified that such a person could perform the jobs of collator operator and merchandise marker. Id. at 75.[7] When Plaintiff's counsel questioned the VE, she asked the following:

> Q.    And is it correct that limitations to no more than simple routine tasks would preclude the ability to carry out detailed and routine instructions?
> A.    Yes.

Id. at 76.

---

[7]When the ALJ asked an earlier iteration of this hypothetical with the same exertional limitations, but limited to simple routine as well as complex tasks and instructions, the VE responded that the individual could not perform Plaintiff's past relevant work. Tr. at 71-72.

Based on the VE's testimony, the ALJ found that Plaintiff was not disabled and could perform the jobs of collator operator and merchandise marker.  Tr. at 42.

### C.    Plaintiff's Claim – Conflict in the Vocational Evidence

Plaintiff contends that there is a conflict in the vocational testimony.  Doc. 9 at 2-10.  Defendant responds that there is no inconsistency and any such claim is waived.  Doc. 16 at 3-8.

Where the ALJ makes an unfavorable determination at step four of the sequential evaluation, the burden shifts to the Commissioner "to show that the claimant is capable of performing other jobs existing in the local and national economy, considering his age, education, work experience, and [RFC]."  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).  In doing so, an ALJ cannot rely on VE testimony that conflicts with the Dictionary of Occupational Titles ("DOT").  See Social Security Ruling ("SSR") 00-4p, "Policy Interpretation Ruling:  Titles II and XVI:  Use of [VE] . . . and Other Reliable Occupational Information in Disability Decisions," 2000 WL 1898704, at *3 (Dec. 4, 2000) ("[A]djudicators may not rely on evidence provided by a VE . . .  if that evidence is based on underlying assumptions or definitions that are inconsistent with . . .  regulatory policies or definitions.").[8]  "When vocational evidence provided by a VE . . . is not

_____

[8]The DOT is a United State Department of Labor publication containing descriptions of the requirements for thousands of jobs in the national economy.  See Martin v. Barnhart, 240 F. App'x 941, 943 (3d Cir. 2007).  "The Social Security Administration and courts alike routinely rely on the [DOT] when determining whether a claimant is capable of performing work that exists in significant numbers in the national economy."  Cowher v. O'Malley, Civ. No. 21-178, 2024 WL 3161865, at *7 (W.D. Pa. June 24, 2024).  "Each occupation description in the [DOT] contain[s] coded information in what is referred to as the 'definition trailer.'"  Lowry v. Astrue, Civ. No. 10-672, 2010

consistent with information in the <u>DOT</u>, the adjudicator must resolve this conflict before relying on the VE . . evidence to support a determination or decision that the individual is or is not disabled." <u>Id.</u>, 2000 WL 1898704, at *4.

Some background is necessary to fully understand Plaintiff's argument. In response to the ALJ's hypothetical with a limitation to understanding, remembering, and carrying out <u>simple routine</u> tasks and instructions and making judgments on <u>simple routine</u> tasks, the VE identified two jobs – collator operator and merchandise marker. <u>Tr.</u> at 74-75.[9] However, according to the <u>DOT</u>, both of these jobs have a reasoning level of 2. Doc. 9 at 5 (citing <u>DOT</u> §§ 208.685-010; 209.587-034); <u>see</u> <u>also</u> https://occupationalinfo.org/20/ 208685010.html and https://occupationalinfo.org/ 20/209587034.html (last visited Feb. 5, 2026). Appendix C of the <u>DOT</u>, explaining the components of the definition trailers, states that a reasoning level of 2 requires an

_____

WL 4791838, at *7 (W.D. Pa. Nov. 18, 2010). As will be discussed, included in the definition trailer is a code for the reasoning level required by the job, which "gauges the minimal ability a worker need to complete the job's tasks themselves." <u>Simpson v. Astrue</u>, Civ. No. 10-2674, 2011 WL 1883124, at *6 (E.D. Pa. May 17, 2011) (internal citation and quotation omitted). The reasoning levels range from level 1, requiring the ability to "carry out simple one- or two-step instructions," up to level 6, requiring the ability to "[a]pply principles of logic or scientific thinking to a wide range of intellectual and practical problems." <u>DOT</u>, Appendix C: General Education Development, 1991 WL 688702.

SSR 00-4p was rescinded on January 6, 2025, and replaced with SSR 24-3p. However, because the ALJ's decision predates SSR 24-3p's application date, the prior SSR is applicable. <u>See</u> SSR 24-3p, "Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions," 2024 WL 5356890, at *2 n.1 (Dec. 6, 2024).

[9]Plaintiff does not challenge the ALJ's consideration of the evidence, nor argue that a limitation to simple routine tasks does not properly address his mental health limitations.

individual to have the capacity to "[a]pply commonsense understanding to carry out

detailed but uninvolved written or oral instructions." DOT, Appendix C:  General

Education Development, 1991 WL 688702 (emphasis added).[10]  Moreover, the VE

testified that a limitation to "simple routine tasks" would preclude "the ability to carry out

detailed and routine instructions "  Tr. at 76.  Plaintiff essentially argues that the jobs

identified by the VE, both having a reasoning level of 2, are incompatible with the RFC

limiting Plaintiff to simple routine tasks and instruction, and that the VE's answer to the

question posed by Plaintiff's counsel at the hearing establishes this conflict.

Defendant first contends that Plaintiff has waived this argument by failing to

challenge the VE's testimony during the hearing.  Doc. 16 at 4-5.  Contrary to

Defendant's argument, it was Plaintiff's counsel who identified the problem at the

administrative hearing when she asked the VE if a limitation to simple routine tasks

would preclude the ability to carry out detailed and routine instructions.  Tr. at 76.  I find

this sufficient to challenge the VE's testimony on this point.  See Gary T. v. Bisignano,

Civ. No. 25-1294, at *16 n.4 (E.D. Pa. Sept. 30, 2025) (finding a similar question

sufficient to challenge the VE's testimony); Handwerk v. Kijakazi, 692 F. Supp.3d 458,

469-70 (M.D. Pa. 2023) (same).

Defendant also contends that a limitation to simple tasks does not conflict with a

reasoning level of 2.  Doc. 16 at 5-8.  In Money v. Barnhart, the Third Circuit found that

---

[10]In contrast, reasoning level 1 requires an individual to have the capacity to "[a]pply commonsense understanding to carry out simple one- or two-step instruction." Appendix C:  General Education Development, DOT, 1991 WL 688702 (emphasis added)

"[w]orking at reasoning level 2 would not contradict the mandate that [a claimant's] work be simple, routine and repetitive." 91 Fed. App'x 210, 215 (3d Cir. 2004). A number of judges in this and our sister districts have relied on <u>Money</u> to reject the argument that there is a conflict between a limitation to simple tasks and jobs at reasoning level 2. <u>See</u>, <u>e.g.</u>, <u>Rooney v. Bisignano</u>, Civ. No. 24-1692, 2025 WL 3750742, at *7 (W.D. Pa. Dec. 29, 2025); <u>Veronica D. v. Comm'r of Soc. Sec.</u>, Civ. No. 24-1326, 2025 WL 2665313, at *5 (M.D. Pa., Sept. 17, 2025); <u>David D. v. O'Malley</u>, Civ. No. 22-6413, 2024 WL 4635305 (D.N.J. Oct. 31, 2024); <u>Jones v. Bisignano</u>, 570 F. Supp.2d 708, 716 (E.D. Pa. 2007).

In this case, however, Plaintiff's argument focuses on the VE's testimony that the limitation to simple routine tasks precluded the ability to perform detailed tasks.

> [Plaintiff] has argued that the [VE's] own testimony created an apparent conflict as to whether [Plaintiff] could have performed the reasoning level 2 occupations adopted by the ALJ with the limitation to simple, routine tasks and instructions adopted by the ALJ.

Doc. 17 at 2 (citing <u>tr.</u> at 30, 41-42, 76; Doc. 9 at 2-10). Several courts have recognized that nearly identical questions and responses from VEs created a conflict in the vocational evidence. <u>See</u> <u>Gary T. v. Bisignano</u>, Civ. No. 25-1294, 2025 WL 2785040, at *17 (E.D. Pa., Sept. 30, 2025); <u>Handwerk v. Kijakazi</u>, 692 F. Supp.3d 458, 469-70 (M.D. Pa. 2023); <u>Michelle N. v. Kijakazi</u>, Civ. No. 22-10, 2022 WL 10048869, at *4 (D.N.J. Oct. 17, 2022); <u>Ellis v. Berryhill</u>, Civ. No. 17-1593, 2018 WL 6271548 (E.D. Pa. Nov. 30, 2018); <u>Upshur v. Colvin</u>, 200 F. Supp.3d 503, 513 (E.D. Pa. July 26, 2016); <u>Alvarado v. Colvin</u>, 147 F. Supp.3d 297, 306-07 (E.D. Pa. 2015), <u>but</u> <u>see</u> <u>L.L. v. Comm'r of Soc.</u>

Sec, Civ. No. 24-09, 2025 WL 491941, at *4 (D.N.J. Feb. 13, 2025) (finding the issue amounted to a conflict between the DOT definition of reasoning level 2 and a limitation to simple, repetitive tasks, which was decided by Money, 91 F. App'x at 215).

The Honorable Lawrence Stengel addressed this argument in 2015, in Alvarado, 147 F. Supp.3d 297.  In that case, the VE identified reasoning level 2 jobs even though he had agreed with the claimant's counsel that a "limitation to routine, repetitive tasks [would] preclude the ability to carry out detailed instructions."  Alvarado, 147 F. Supp.3d at 307.

> The [VE] testified that . . . a restriction to routine, repetitive tasks, would preclude plaintiff from being able to carry out detailed instructions.  All of the jobs identified by the [VE] required a reasoning level of 2, which requires the ability "to carry out detailed but uninvolved written or oral instructions." There is a conflict between the [VE's] testimony that a restriction to routine, repetitive tasks, would preclude plaintiff from being able to carry out detailed instructions, and the [VE's] testimony that plaintiff could perform reasoning level 2 jobs, that require the ability to carry out detailed instruction. The ALJ did not ask the [VE] to clarify these inconsistencies. A remand is appropriate so that the ALJ can explain these inconsistencies.

Id.  The same is true here.

Defendant contends that Plaintiff's argument is flawed because counsel's question at the administrative hearing did not accurately reflect the requirements for reasoning level 2, which states that the person must have the ability to carry out "detailed **but uninvolved** written or oral instructions."  Doc. 16 at 6 (quoting 1991 WL 688702) (emphasis added by Defendant).  Defendant maintains that the modifier is material to the

disposition. Plaintiff responds that this is an impermissible post hoc argument and the modifier is superfluous. Doc. 17 at 3-4.

Here, the ALJ did not recognize the conflict presented by the VE's testimony and, therefore, did nothing to resolve the conflict. This court is constrained to review only the ALJ's reasoning, not the post hoc arguments propounded by Defendant after the ALJ's decision. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")).

Moreover, the courts addressing similar arguments -- where the VE testified that an ability to perform detailed instructions (without any modifier) was inconsistent with an ability to perform simple tasks -- "have predominantly held that a conflict exists," despite counsel's failure to include any modifier on detailed instructions when questioning the VE. See Gary T., 2025 WL 2785040, at *17 (citing Upshur, 200 F. Supp.3d at 511-14) (Alvarado, 147 F. Supp.3d 297; Ellis, 2018 WL 6271548; Michelle N., 2022 WL 10048869; Mitchell v. Berryhill, Civ. No. 17-6241, 2019 WL 426149) (N.D. Ill. Feb. 4, 2019)).

Having found a conflict exists in the vocational evidence that was not addressed by the ALJ, I will remand this case for the ALJ to address the inconsistency created by the VE's testimony.[11]

---

[11]Having found that remand is appropriate, I need not address Plaintiff's argument that the merchandise marker job is obsolete.

### D.     <u>Remedy</u>

Plaintiff maintains that "the proper remedy in this case is a remand for an award of benefits." Doc. 9 at 10.  Defendant argues that the proper remedy is a remand for further consideration of the vocational testimony.  Doc. 16 at 10.

An "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." <u>Podedworny v. Harris</u>, 745 F.2d 210, 221-22 (3d Cir. 1984).  "The Court of Appeals has held that where there has been inordinate delay, coupled with an existing record that contains substantial evidence supporting a finding of disability, a reversal with direction to award benefits is appropriate, rather than a remand for further proceedings." <u>Cordero v. Kijakazi</u>, 597 F. Supp.3d 776, 821 (E.D. Pa. 2022) (citing <u>Morales v. Apfel</u>, 225 F.3d 310, 320 (3d kCir. 2000)).

Here, Plaintiff's claims focus on the vocational evidence.  Even if Defendant finds that the VE improperly identified reasoning level 2 jobs, it is not clear that Plaintiff is precluded from working or that there are no reasoning level 1 jobs available considering Plaintiff's other limitations.  There has been no significant delay in adjudicating Plaintiff's claims and the case was not previously remanded.  Defendant will be given the opportunity to address the conflict in the vocational evidence and rectify the error.

14

## IV.    <u>CONCLUSION</u>

Because the ALJ failed to resolve a conflict in the vocational evidence, the VE's testimony does not provide substantial evidence to support the step five determination and the ultimate decision that Plaintiff is not disabled.

An appropriate Order follows.